NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250583-U

NO. 4-25-0583

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| VIDAL RAINEY, | ) | No. 23CF269 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Remand is not required due to a conflict of interest on the part of appointed counsel, defendant's facially invalid claim of ineffective assistance of counsel was insufficient to trigger an inquiry, and the sentencing claim is not ripe.

¶ 2    Defendant Vidal Rainey pleaded guilty to two counts of aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)) stemming from an incident with correctional officers while he was incarcerated. He filed a motion to withdraw his guilty plea that was amended by appointed counsel and subsequently denied by the circuit court.

¶ 3    On appeal, he argues that (1) his appointed counsel labored under an actual conflict of interest when she did not withdraw following his allegations of ineffective assistance of counsel in the *pro se* motion to withdraw the plea, (2) the circuit court erred in failing to conduct an inquiry into his allegations of ineffective assistance of counsel, and (3) the matter should be remanded to correct the "Payment Status Information." For the reasons that follow, we affirm.

¶ 4                                   I. BACKGROUND

¶ 5            Prior to defendant's guilty plea, defense counsel subpoenaed his medical and

mental health records. Counsel also asserted a *bona fide* doubt as to defendant's mental fitness and

moved to have him evaluated to determine whether he could stand trial. The circuit court did not

find that there was a *bona fide* doubt as to fitness, but it nonetheless appointed a psychologist to

examine him. The court also ordered that if the psychological report determined there was a

*bona fide* doubt regarding defendant's fitness, a hearing would be held within 45 days of the report.

¶ 6            Throughout the pendency of this case, defendant refused to appear in court. When

the circuit judge and court reporter conducted proceedings in the holding cell area, he would often

engage in behavior that made it difficult, if not impossible, to conduct the proceedings. During one

of the proceedings, where defendant refused to appear, defense counsel informed the circuit court

that defendant wanted to enter a plea. The court rebuffed the suggestion, noting it would not be

able to accept a plea until after receiving the fitness report from the psychologist.

¶ 7            The record on appeal does not contain the report of the appointed psychologist, but

it is apparent that one was prepared, as there is a billing document and an order granting fees for

the appointed psychologist. At a status hearing, defense counsel noted that the psychologist was

able to conclude the fitness portion of the assessment, but the matter was continued in order for

the "insanity" portion to be completed. The record does not indicate that the report raised a

*bona fide* doubt as to defendant's fitness, and the matter proceeded to a jury trial.

¶ 8            On the day of trial, defendant tried to inform the circuit court that he wanted to

discharge his appointed counsel and proceed *pro se*. When the court asked if defendant was ready

to proceed to trial, he stated he was being forced to trial. After some dialogue, the court found that

the request to proceed *pro se* was not unequivocal, so the matter would proceed to trial. Defendant

argued he was not ready for trial because he had witnesses that were not present, but he could proceed *pro se* if given his discovery. The court once again refused to discharge defendant's appointed attorney.

¶ 9 When discussing previously offered plea deals, defendant stated that one reason for turning down the prior offers was the fact that his current correctional institution did not have mental health treatment. The circuit court indicated that it did not know whether Menard Correctional Center had mental health treatment and could not guarantee whether he would receive treatment, but it could still make the recommendation as part of the sentence. Defendant instead asked for a recommendation to be placed in a mental health facility, but the court denied that request, as it had no factual basis to support it.

¶ 10 After a recess, defendant stated he would accept the State's offer and plead guilty in return for four and a half years in the Illinois Department of Corrections (DOC), as long as the circuit court recommended that he receive mental health treatment and DOC acted on that recommendation. The court stated the terms of the plea, which included language that DOC promptly consider the court's recommendation for mental health treatment. The court found that there was a factual basis for the plea, that defendant knowingly and voluntarily pled guilty, and it accepted the plea. Defendant interjected, attempting to argue his plea was "guilty but insane," but the court stated there was no evidence to support that assertion and noted that the previous psychological evaluation concluded that he was not insane at the time of the offenses.

¶ 11 The circuit court then entered the sentences for the offenses, which included a recommendation that DOC promptly provide mental health treatment. The court also expressly ordered, "Waiver of Criminal Court Assessment granted 100%," followed by a plus sign or ampersand and the words, "100% of fine waived."

¶ 12       Defendant subsequently filed a *pro se* motion to withdraw his guilty plea. The motion argued, among other things, that Menard Correctional Center did not have mental health treatment available, and he had informed the circuit court he would plead guilty with mental health treatment as part of the plea. Additionally, his counsel was ineffective for not raising the issue of his state of mind at the time of the offenses and that he should have been granted the right to represent himself. Appointed counsel filed a motion to withdraw the guilty plea that incorporated defendant's *pro se* allegations.

¶ 13       A hearing followed, where appointed counsel asserted that DOC had not provided mental health treatment to defendant and that the primary reason for the motion to withdraw the guilty plea was because of the lack of mental health services. Counsel did not argue her own ineffectiveness as alleged in defendant's *pro se* motion, and the circuit court did not mention the allegations during the hearing. The court stated that it was made "very clear" to defendant that the court was making a recommendation and determined that defendant was fully aware at the time that he entered the plea that the recommendation was not binding upon DOC. The court additionally stated that there was "no doubt that [defendant] [was] guilty of the offense[s] and does not really have a meritorious defense to the charges." The court denied the motion.

¶ 14       This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16       Defendant presents three arguments on appeal. First, he contends that appointed counsel labored under an actual conflict of interest where she was required to argue her own ineffectiveness at the hearing on the motion to withdraw the guilty plea. Second, he argues the matter should be remanded for a preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) on the same claim of counsel's ineffectiveness. And third, remand is necessary to

- 4 -

amend the "Payment Status Information" to match the circuit court's oral pronouncement and written order waiving all financial indebtedness related to the offenses. We address each point in turn.

¶ 17                                             A. Conflict of Interest

¶ 18            "A criminal defendant's right to the effective assistance of counsel arises from the sixth amendment and includes the right to conflict-free representation." *People v. Green*, 2020 IL 125005, ¶ 20. The effective assistance of counsel in this context "means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988).

¶ 19            "In Illinois, conflicts of interest are divided into two categories, *per se* and actual." *People v. Boswell*, 2023 IL App (4th) 220754, ¶ 66. Here, defendant concedes, and we agree, that his claim of a conflict of interest does not fall into the *per se* category, instead arguing that counsel labored under an actual conflict. See *People v. Fields*, 2012 IL 112438, ¶ 18 (noting the three circumstances allowing for a *per se* conflict claim). "To establish an actual conflict of interest, a defendant must identify an actual conflict that adversely affected his counsel's performance." *People v. Yost*, 2021 IL 126187, ¶ 38 "A deficiency in counsel's strategy, tactics, or decision-making that is attributable to the alleged conflict must be specifically identified as speculation and conjecture are insufficient." *Boswell*, 2023 IL App (4th) 220754, ¶ 82.

¶ 20            Defendant relies on caselaw derived from the First District's decision in *People v. Norris*, 46 Ill. App. 3d 536, 541-42 (1977), that requires counsel to withdraw from representation when there is an allegation of ineffective assistance of counsel in a motion to withdraw a guilty plea. This precedent is "based *** on two long-standing principles: attorneys cannot argue their own ineffectiveness, nor can they be a witness for or against the defendant when their

representation is a contested issue." *People v. Gray*, 2023 IL App (4th) 230076, ¶ 18 (citing *Norris*, 46 Ill. App. 3d at 541-42; Ill. R. Pro. Conduct (2010) R. 3.7 (eff. Jan. 1, 2010)). While the application of this precedent is not uniform across the districts of the Illinois Appellate Court, this court has recently continued to apply it. See *Gray*, 2023 IL App (4th) 230076, ¶¶ 19-22; *People v. Herring*, 2025 IL App (4th) 241167-U, ¶ 37.

¶ 21    Defendant argues that based on his allegations in his motion to withdraw the guilty plea that counsel refused to argue that he was not sane at the time of the offenses, that counsel would have been a "critical witness" to establish his claim, and we should remand the matter for further postplea proceedings and the appointment of new counsel. The simplicity of defendant's argument betrays the framework in which it operates. He has already conceded that his claim of conflict is not of a *per se* variety, where prejudice is presumed. While a showing of prejudice in the case of an actual conflict is not the same as that under a claim of ineffective assistance of counsel, we still review the merits of the underlying claim to determine if the defendant has truly established a deficiency that adversely impacted counsel's representation. See *People v. Austin M.*, 2012 IL 111194, ¶ 82; *People v. Carroll*, 2024 IL App (4th) 231207, ¶ 80. Because actual conflicts usually arise in the context of joint representation, courts have generally discussed the standard as not requiring the defendant to establish prejudice in that the conflict resulted in a conviction, but there must be " 'some specific defect in his counsel's strategy[,] tactics, or decision making attributable to the conflict.' " *People v. Taylor*, 237 Ill. 2d 356, 376 (2010) (quoting *Spreitzer*, 123 Ill. 2d at 18).

¶ 22    While the allegations of ineffective assistance of counsel are patent from the face of defendant's *pro se* motion, we find that he has failed to establish an actual conflict where the underlying merits of the claim fail. Defense counsel pursued claims relating to defendant's mental

fitness from the outset of these proceedings, subpoenaing defendant's medical and mental health records and asserting a *bona fide* doubt as to defendant's mental fitness. Counsel's efforts resulted in a psychological evaluation by a licensed practitioner. It is apparent from the proceedings that despite counsel's efforts, the report from the psychologist did not support a *bona fide* doubt as to defendant's fitness to stand trial. At the plea hearing, when the circuit court accepted defendant's guilty plea, defendant attempted to interject, noting he was guilty but insane. It was at this point that the court rebuffed defendant, noting there was no evidence to support a guilty but insane disposition and that the psychological evaluation found that he was not insane at the time of the offenses.

¶ 23 As we previously noted, the psychological report is not included in the record. Still, despite defendant's allegation that counsel was deficient for failing to argue his mental state at the time of the offenses, counsel clearly investigated the matter and found the argument to be without merit. Defendant does not point to the psychological report in his briefing, nor does he argue that the report concludes anything other than what the circuit court described. It is not incumbent on this court to surmise what was in that report, or to assume it was favorable to defendant, when it is not in the record, especially because the record, as it stands, indicates the report did not support defendant's argument. Of course, if we were to do so, it would run afoul of the principle that, in this context, doubts arising from the incompleteness of the record are resolved against the defendant. See *People v. Carter*, 2021 IL 125954, ¶ 39. Given these circumstances, defendant has failed to establish that counsel's strategy, tactics, or decision-making in failing to argue her own ineffectiveness were attributable to an actual conflict. While generally we agree that counsel should not argue their own ineffectiveness, the failure to withdraw following the *pro se* allegations of ineffective assistance of counsel apparent from the face of the pleading does not necessitate

remand.

¶ 24                                  B. *Krankel* Inquiry

¶ 25         Next, defendant argues that the same claim of ineffective assistance of counsel requires remand where the circuit court did not hold a formal inquiry into the claim. Generally, if a defendant makes a *pro se* claim of ineffective assistance of counsel to the court following a guilty plea, the court must investigate the claims. *People v. Patrick*, 2011 IL 111666, ¶ 29.

¶ 26         While this investigation usually involves discussion between the circuit court, defense counsel, and the defendant, the court may also dispose of a claim due to insufficiency of the allegation on its face. See *People v. Moore*, 207 Ill. 2d 68, 78-79 (2003); see also *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 24 ("If a defendant does not make a valid ineffective assistance claim, [he] does not trigger the need for the trial court to inquire." (Internal quotation marks omitted.)); *People v. Mourning*, 2016 IL App (4th) 140270, ¶ 13 ("[A]n interchange with counsel or the defendant is not always necessary, as the trial court can base its evaluation *** on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." (Internal quotation marks omitted.)).

¶ 27         Here, defendant contended in his *pro se* motion that defense counsel should have argued that he "was not in his right state of mind at the time of the offense[s]." However, as discussed, it is apparent from the record that counsel had investigated this claim and, following the submission of the psychological examination, found that argument to lack merit. Defendant, in his briefing, does not contend the report contains any other conclusion or that it would support his claims on appeal. Rather, mention of the report is as conspicuously absent in his arguments as it is from the record.

¶ 28         Also relevant here is the fact that defendant pleaded guilty. " ' "It is well established

that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*." ' " (Emphasis in original.) *People v. Jones*, 2021 IL 126432, ¶ 20 (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33, quoting *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)). Defendant's valid acceptance of the State's offer to plead *guilty*, not guilty but insane, waived the claim of ineffective assistance allegedly to have occurred prior to the plea, rendering the claim of ineffective assistance of counsel nonviable on its face. See *Thomas*, 2017 IL App (4th) 150815, ¶ 24; see also *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000) (finding the defendant's claims of ineffective assistance based on his counsel's failure to move to suppress evidence before the entry of his guilty plea were waived by the defendant's guilty plea). Defendant's claims on this point all relate to defense counsel purportedly refusing to raise the issue of his mental state as it existed at the time of the offenses. Defendant's mental state was a matter that was investigated prior to his plea, and his capacity at the time of the offenses was a topic evaluated in the psychological report. Counsel's investigation of the defense and defendant's awareness of it preceded his decision to plead guilty. Defendant provides no support for the contention that counsel did not advise him of the defense or that the advice he received from counsel as to this defense was not " 'within the range of competence demanded of attorneys in criminal cases.' " *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Moreover, defendant himself advocated this mental state position during the plea hearing but was rebuffed by the circuit court and continued with the plea.

¶ 29 Even if we were to assume, *arguendo*, that the circuit court erred in considering defendant's claims of ineffective assistance of plea counsel, the State argues that any such error was harmless. Because of the foregoing analysis regarding the particular facts of this case and applicable law, we agree. See *People v. Robinson*, 2026 IL App (4th) 250418-U, ¶ 53 (finding any

potential claim of an inadequate *Krankel* inquiry to be harmless error) (citing *People v. Justice*, 2023 IL App (4th) 230068-U, ¶ 36 ("Even if defendant was entitled to a *Krankel* inquiry, the circuit court's failure to conduct a preliminary *Krankel* inquiry was harmless error.") (citing *People v. Palomera*, 2022 IL App (2d) 200631, ¶ 63)); see also *People v. Burks*, 343 Ill. App. 3d 765, 773-77 (2003) (affirming despite no *Krankel* inquiry at all when allegations were conclusory and without merit).

¶ 30    Both because the record rebuts defendant's argument concerning his state of mind at the time of the offenses and because he waived that argument by taking the State's fully negotiated offer and pleading guilty, we need not remand this matter for a *Krankel* inquiry.

¶ 31                    C. Fines, Costs, and Assessments

¶ 32    Finally, defendant argues, and the State concedes, that there is some conflict in the record concerning the amount, if any, defendant owes in fines or fees. The State has conceded, and we agree, that the circuit court's oral ruling and written order both expressly waived defendant's responsibility for assessments and fees. Despite this, a clerk record labeled "Payment Status Information" shows defendant owing a balance of $220.08, which includes the $150 fine expressly waived by the court.

¶ 33    We do not agree with the parties, however, that it would be appropriate to remand the matter to the circuit court for correction of the record. We are unclear on the nature of the $70.08 amount listed under the label "Clerk" in the summary of defendant's payment status. A simple ministerial correction of the record of defendant's fines and fees appears to us to be precisely the type of issue that should be brought in the circuit court first pursuant to Illinois Supreme Court Rule 472(c) (eff. Feb. 1, 2024). Defendant should file such a motion to seek correction of the record, if appropriate.

## III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment.

Affirmed.